UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM A. WHITE, #13888-084,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 18-cv-1682-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion filed by the defendant United States of America for summary judgment on plaintiff William A. White's two remaining claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671-80 (Doc. 36). White has responded to the motion (Doc. 37). In this case, White, an inmate at the United States Penitentiary at Marion, Illinois ("USP-Marion"), asserts that he was subjected to conditions of confinement that led him to develop Posttraumatic Stress Disorder ("PTSD"). In the two remaining claims, he asserts that officials at USP-Marion failed to diagnose and treat his PTSD and fabricated medical records to conceal his requests for treatment. He believes this conduct amounts to medical negligence (Count 7)[1] and negligent infliction of emotional distress ("NIED") (Count 8) for which the FTCA provides a remedy.

**I.**     **Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] The Court does not distinguish between medical and psychological providers in this order. References to "medical" providers, evaluation, diagnosis, and treatment are intended to include "psychological" providers, evaluation, diagnosis, and treatment as well.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The United States points to White's failure to provide an adequate physician's report attesting to the merit of his claim as required for a medical malpractice claim under Illinois law. The United States further argues that Count 8, which asserts NIED based on the same factual allegations, is duplicative of Count 7 because relies on the distress arising from medical negligence.  White maintains that he can file a medical report sufficient to support his medical malpractice claim and that Count 8 is not duplicative of Count 7.

**II.    Facts**

The evidence establishes the following relevant facts for the purposes of this motion.  In 2015-16, psychologist Eric Ostrov, Ph.D., conducted a psychological evaluation of White while he was incarcerated in the Metropolitan Correctional Center in Chicago, Illinois ("MCC-Chicago").[2]  In his report dated July 22, 2016, Dr. Ostrov concluded that White suffered from PTSD and Personality Disorder with Borderline and Narcissistic Traits.

In June 2016, shortly after Dr. Ostrov issued his report with a PTSD diagnosis, White arrived at USP-Marion.  White was unhappy with the medical/psychological care he received at USP-Marion.

---

[2] It appears that the full report has been omitted or redacted to withhold portions that include Dr. Ostrov's observations from his interviews with White (Doc. 37-1).  The report jumps from page 2 to 21, with large blank spaces at the bottom of an unnumbered page, presumably page 3 based on its continuity with page 2, and at the top of page 21.

On September 4, 2018, White filed this lawsuit asserting numerous claims, and on March 5, 2019, he filed his Amended Complaint containing medical malpractice claims, among other claims. In light of the Amended Complaint and several Court orders (Docs. 19 & 33), only two claims remain—Counts 7 and 8. In Count 7, White alleges medical staff at USP-Marion—specifically, Dr. J. Munneke—were negligent in that they failed to investigate his PTSD diagnosis, denied that he suffered from PTSD, failed to offer any treatment other than medication, and falsified records to show White refused treatment. In Count 8, White alleges the same acts of negligence but adds claims of damage from emotional distress.

White did not attach to either his original Complaint or his Amended Complaint a statement from a physician attesting that his medical malpractice claims had merit as required to support such a claim under the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622. The Court allowed him additional time to file the necessary certificate, ultimately extending that deadline to August 19, 2019, and ordered the BOP to allow Richard M. Samuels, Ph.D., to evaluate White in USP-Marion. Dr. Samuels is a psychologist.

White timely filed as a supplement to his Amended Complaint an affidavit from his counsel (who has since withdrawn from the case) accompanied by a written report from Dr. Samuels (Doc. 23-1). Dr. Samuels' report concludes:

> Based on a review of the supplied documents, my training and experiences as outlined in the attached curriculum vitae, my familiarity with the relevant medical and psychological literature, provided by various federal facilities in which Mr., [*sic*] White was incarcerated, appears [*sic*] to have deviated from accepted medical standards and likely represent acts of medical negligence. As a result, this examiner is of the professional opinion that there is a reasonable and meritorious cause for filing a medical malpractice action.

Samuels Rep. 15-16 (Doc. 23-1 at 17-18).

The Government asserts that Count 7 and Count 8 are both governed by the Illinois

3

Healing Art Malpractice Act because they rely on the same allegedly negligent medical conduct. It argues that Dr. Samuels' report is not sufficient under 735 ILCS 5/2-622 to support either count, and that as a consequence it is entitled to summary judgment on Counts 7 and 8 for failure to exhaust administrate remedies as required by the FTCA.  White contends Dr. Samuels' report is sufficient to constitute exhaustion for Count 7 and is not required for Count 8.  He further asks for leave to correct typographical errors and to submit a supplemental report, which he has tendered for filing.  He also seeks an order directing the BOP to allow him to have unmonitored phone calls with Dr. Samuels.

**III.    Analysis**

    A.    <u>Count 7:  Medical Malpractice</u>

The FTCA is a limited waiver of the Government's sovereign immunity.  It gives federal courts:

> exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Thus, where a private doctor committing medical malpractice in Illinois would be liable, so will the United States for the conduct of a federal employee doctor.

Cases alleging a private doctor committed medical malpractice in Illinois are subject to the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622.  That law requires a plaintiff making a claim of medical malpractice to consult with a health professional who must certify that the claim has merit.  735 ILCS 5/2-622(a).  The plaintiff must file, as a substantive requirement of his claim, a written report of a reviewing health professional, often referred to as a "certificate of merit."  The report must clearly identify the plaintiff "and the reasons for the reviewing health

4

professional's determination that a reasonable and meritorious cause for the filing of the action exists." *Id.*  A report must be fairly specific.  It is insufficient where it relies on general conclusions of malpractice and fails to state the standard of care or an appropriate alterative course of treatment that was not provided and how that course could have improved the plaintiff's condition.  *Ortiz v. United States*, No. 13 C 7626, 2014 WL 642426, at *3 (N.D. Ill. Feb. 19, 2014); *compare Peterson v. Hinsdale Hosp.*, 599 N.E.2d 84, 88 (Ill. App. Ct. 1992) (finding broad allegations of negligence may be sufficient in cases pursuing *res ipso loquitor* theory).  The report must specifically describe the deficiencies in care and the reviewing health professional's reasons for finding that care deficient.  *Ortiz*, 2014 WL 642426, at *3.  For example, a report cannot simply state that "inappropriate" actions occurred without identifying what they were.  *See Premo v. Falcone*, 554 N.E.2d 1071, 1076 (Ill. App. Ct. 1990); *Peterson*, 599 N.E.2d at 88.

The purpose of this requirement is to reduce the number of frivolous malpractice suits.  *Ebbing v. Prentice*, 587 N.E.2d 1115, 1117 (Ill. App. Ct. 1992).  Because the purpose is to reduce frivolous lawsuits rather than to ensure a lawsuit has a minimum likelihood of success or to provide adequate notice to a particular defendant, Illinois courts liberally construe the certificate of merit requirement in favor of the plaintiff as long as it achieves the statute's purpose.  *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  It has, for example, accepted as adequate a single report as to multiple defendants where the report discussed each defendant, the deficiencies in the medical care they provided, and the belief that there was a reasonable and meritorious cause against each.  *Id.* at 614 (citing *Neuman v. Burstein*, 595 N.E.2d 659, 664 (Ill. App. Ct. 1992)).

Compliance with § 2-622(a) is a substantive condition of liability under Illinois law, so it

applies to FTCA malpractice litigation in federal court. *Young v. United States*, 942 F.3d 349, 350 (7th Cir. 2019) (citing *Hahn v. Walsh*, 762 F.3d 617 (7th Cir. 2014)), *cert. denied,* 141 S. Ct. 295 (2020). Cases in federal court that lack the requisite affidavit and report are subject to summary judgment. *Young*, 942 F.3d at 351. So the main issue here is whether the report authored by Dr. Samuels is sufficient under Illinois law.

1. Dr. Samuels' August 14, 2019 Report (Doc. 23-1)

Dr. Samuels' report (Doc. 23-1 at 3-18), labeled as an "Independent Psychological Evaluation," is sixteen pages, not including exhibits, and reports on Dr. Samuels' study conducted from June 18 to August 14, 2019. He sets forth the purpose of the exam: "to conduct an independent psychological evaluation to help ascertain Mr. White's current mental condition that may have resulted from what Mr. White described to be traumatic events that left him with the significant psychiatric illness of Posttraumatic Stress Disorder." Samuels Rep. 2. Dr. Samuels then lists the materials he reviewed for the report, which notably do not include any records from psychological evaluation, diagnosis, or treatment at USP-Marion. *Id.* at 3. He further clarifies that his conclusions and opinions depend upon the completeness, thoroughness, and accuracy of the information provided by White, his attorney, and his mother. *Id.* at 4.

Dr. Samuels describes his examination and observations, *id.* at 4-6, and the results of psychological testing, *id.* at 6-10. Those tests included three tests or scales specific to PTSD—the Posttraumatic Stress Diagnostic Scale, the PTSD Checklist for DSM-5, and the PTSD Scale of the Millon Multiaxial Clinical Inventory-III—that indicated White suffered from that condition. *Id.* at 7. Indeed, Dr. Samuels diagnosed White with PTSD and Narcissistic Personality Disorder with histrionic, antisocial, and obsessive-compulsive traits, along with other possible disorders. *Id.* at 10-12. Dr. Samuels opines that White's PTSD is likely the result of, or

6

may have been triggered by, conditions to which he claims he was subjected while incarcerated at MCC-Chicago in 2008 (unsanitary conditions, witnessing abuse of another inmate), at the Federal Correctional Institute in Beckley, West Virginia, in 2010 (isolation), and at the John C. Polk Correctional Facility in Seminole County, Florida, in 2014 (sleep deprivation, harsh conditions). *Id.* at 11. Dr. Samuels concludes that some unnamed person or entity "appears to have deviated from accepted medical standards and likely represent acts of medical negligence," so there is "a reasonable and meritorious cause for filing a medical malpractice action." *Id.* at 15-16.

Even liberally construed in White's favor, Dr. Samuels' report is insufficient to satisfy the requirements of § 2-622(a) for a medical malpractice case against the United States based on the medical negligence of medical professionals at USP-Marion, the cause of action asserted in Count 7. It is true that Dr. Samuels' report is evidence that White suffered from PTSD at the time of Dr. Samuels' study and at the time he was transferred to USP-Marion in June 2016, but it does not discuss the *care* provided for that PTSD. The report contains only general conclusions of malpractice without any citation to the specific deficiencies in White's care by medical personnel at USP-Marion (or any other institution, for that matter) or any explanation of how or why that care was deficient. Dr. Samuels further fails to state the standard of care or an appropriate alternative course of treatment that USP-Marion medical personnel could have taken that would have improved White's condition—that is, how PTSD like White's could or should have been treated by competent professionals.

In fact, this is no surprise because *Dr. Samuels did not even review any evidence about White's evaluation, diagnosis, or treatment at USP-Marion.* His review was limited to interviews with White and his mother, neither of which described any conduct at USP-Marion

7

that Dr. Samuels found worthy of noting in his report. He also reviewed BOP documents that pre-dated White's transfer to USP-Marion, including records from MCC-Chicago and Polk Correctional Facility, and pleadings White filed in this and other lawsuits. Dr. Samuels' report simply does not contain the information required by a § 2-622(a) certificate of merit as described in *Ortiz*, *Peterson*, or *Premo* to support a medical malpractice claim based on the conduct of USP-Marion medical personnel. Again, this is not surprising because the express purpose of the report was to "ascertain Mr. White's current mental condition," not to substantiate a cause of action for medical negligence.

White contends that the shortcomings of Dr. Samuels' report asserted by the United States are either mere clerical errors that can be cured through amendment or details not required to be in the certificate of merit in the first place. White notes that the first sentence of Dr. Samuels' conclusion is not even a grammatically correct sentence and is clearly missing one or more words, perhaps the names of the individuals believed to be negligent. However, simply filling in names of individuals will not cure the larger defects in Dr. Samuels' report—the absence of any statement of the standard of care, of the care provided to White, of an opinion that that care was inadequate, and of how and why that care was deficient in the circumstances. *That* is not a mere clerical error; the missing items are essential to satisfying § 2-622(a)'s requirement for "the *reasons* for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." (emphasis added).

    2.    <u>Supplements</u>

On March 8, 2021, White, appearing *pro se* at the time, tendered a supplemental response to the motion for summary judgment (Doc. 42). In that supplemental response, he presents a letter from Dr. Samuels stating that he needs to have an unmonitored call with White in order to

prepare a supplement to his original report submitted as a § 2-622(a) certificate of merit.[3]

On June 4, 2021, White also asked for leave to file Dr. Samuels' May 20, 2021, supplemental report as a supplemental certificate of merit (Doc. 43).  The motion for leave to file was temporarily placed under seal pursuant to a Court order in *White v. Collis*, 20-cv-1117 (Mar. 12, 2021), to prevent White from filing information that poses a public security threat.  The Court has reviewed this motion and finds that it poses no such threat and will accordingly order it unsealed.

Dr. Samuels' supplemental report takes some steps toward adequacy as a certificate of merit.  It lists several different available methods of treatment of PTDS and opines that White should be provided with "the most appropriate treatment modalities."  Samuels Supp. Rep. 3 (Doc. 43 at 5).  Still absent, however, are a statement of the standard of care (not just possible options for care), a description of the care White received at USP-Marion, how and why that care was not up to the standard of care, and what should have been done that was not.  In essence, Dr. Samuels' supplemental report would not cure the deficiencies in his original report.  The Court will therefore deny White leave to file it.

However, because it appears that Dr. Samuels may be qualified to author a satisfactory certificate of merit after reviewing the relevant documents—that is, how White was treated at USP-Marion—the Court will give White one final chance to obtain an appropriate § 2-622(a) certificate of merit.  Ordinarily, the Court would not be this generous.  After all, White has known about this requirement at least since counsel first appeared on his behalf in November

---

[3] White alleges without any evidence that delays in his mail to Dr. Samuels have been caused by USP-Marion staff.  The Court notes that regular mail delivery by the United States Postal Service has been abysmally slow in recent months both in and out of prisons, likely due to a variety of factors unrelated to any desire to interfere with White's mail.  No evidence suggests improper conduct by any USP-Marion staff member.

9

2018.  The Court gave him repeated extensions of time culminating in the ultimate deadline of August 19, 2019, when he filed Dr. Samuels' original report.  Then the law changed to require complaints about the certificate of merit to be raised on summary judgment, not at the motion to dismiss stage.  *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019).  And, before the Court had time to consider the United States' summary judgment, the pandemic hit, complicating litigation, especially prisoner litigation in light of prohibitions on visitation and inordinate mail delays.

So in these unusual circumstances, the Court will grant the United States' motion for summary judgment on Count 7, dismiss that count without prejudice, and allow White additional time to move to reinstate Count 7 with an adequate report from Dr. Samuels attached.  If White fails to timely submit a report that satisfies § 2-622(a) with respect to his medical malpractice claims based on conduct of medical personnel at USP-Marion, the Court will convert that disposition to dismissal with prejudice.

B.      Count 8:  Negligent Infliction of Emotional Distress

The United States also asks the Court for summary judgment on Count 8 on the grounds that it is really a medical malpractice action that is duplicative of Count 7 and suffers from the same infirmities, that is, it is unsupported by the required certificate of merit.  White contends Count 8 sets forth a claim of ordinary negligence distinct from the medical malpractice claims in Count 7.  He further points to Illinois law that does not require expert testimony to prove a plaintiff suffered emotional distress.  Finally, White claims that Count 8 is not medical malpractice because it alleges medical personnel falsified records to show he refused treatment.

As a preliminary matter, White misses the mark when he argues that no expert testimony is needed for an NIED claim.  The cases he cites, *Thornton v. Garcini*, 928 N.E.2d 804 (Ill.

10

2010), and others, hold that Illinois law does not required expert testimony in all cases *to establish emotional distress*. *Id.* at 809-10. This is because whether and why someone suffers emotional distress can be apparent to a jury without expert testimony. *Id.* Those cases did not hold, however, that no expert testimony is ever required in an NIED case. It may be necessary, as discussed below, when the jury is not equipped through its common knowledge and experience to determine the standard of care in a specialized field and whether someone practicing in that field has breached that standard and caused injury. *Thornton* and related cases simply are not relevant to the questions before the Court today—whether Count 8 is a medical malpractice claim.

Whether a claim is for ordinary negligence or medical malpractice will determine whether it must be supported by a certificate of merit. A claim is considered to be for medical malpractice, and requires a certificate under § 2-622(a), where the applicable standard of care involves procedures beyond the ken of the ordinary lay juror, the conduct in issue was a matter of medical judgment, and expert testimony is required to establish the standard of care for the jury. *Jackson v. Chi. Classic Janitorial & Cleaning Serv., Inc.*, 823 N.E.2d 1055, 1059 (Ill. App. Ct. 2005); *see Bommersbach v. Ruiz*, 461 F. Supp. 2d 743, 749 (S.D. Ill. 2006). The scope of a "medical malpractice" action should be construed broadly. *Jackson*, 823 N.E.2d at 1058.

Nevertheless, where it is not necessary to have medical training or expert testimony to determine a medical professional's duty or breach, and where the conduct of the medical professional was not in the exercise of medical judgment, the negligence action will not sound in medical malpractice. For example, in *Goings v. Baldwin*, No. 16-cv-489-SMY-RJD, 2018 WL 2129743 (S.D. Ill. May 9, 2018), a plaintiff stated claim that was not medical malpractice when he accused his psychiatrist of recklessly or intentionally recording false information in his

11

medical records. *Id.* at *2.  The Court reasoned that a jury needed no specialized medical knowledge or assistance from a medical expert to know that recklessly or intentionally falsifying records breached a standard of care, although it might where the question is whether the psychiatrist exercised medical judgment to apply professional principles of medical documentation.  *Id.*

The Court agrees with the United States that White's claim for NIED is, at least in part, a medical malpractice claim.  To the extent it relies on allegations relating to the manner in which medical personnel at USP-Marion evaluated White and used their medical judgment to diagnose and treat him, those activities are beyond the grasp of an ordinary lay juror, involve the exercise of medical judgment, and would require expert testimony to establish the standard of care.  Thus, that part of Count 8 is, in fact, a medical malpractice claim and is duplicative of Count 7.

However, to the extent Count 8 alleges falsification of White's medical records, such conduct and standard of care may be within the grasp of an ordinary juror.  It is not difficult to comprehend that medical records should not be falsified, and it is likely safe to assume falsifying records is not an exercise of medical judgment.  Accordingly, this part of Count 8 is not duplicative of Count 7, is not "medical malpractice," and will survive as a stand-alone NIED claim.  While it remains to be seen whether White can prove the physical injury or impact required for an NIED claim for direct injury—or indeed whether he can prove any injury at all from an allegedly false statement in a medical record—he may proceed with this claim.  *See Schweihs v. Chase Home Fin.*, LLC, 77 N.E.3d 50, 58 (Ill. 2016).

### IV.  Conclusion

For the foregoing reasons, the Court:

- **DIRECTS** the Clerk of Court to unseal White's June 4, 2021, motion for leave to file Dr. Samuels' May 20, 2021, supplemental report (Doc. 43);

- **DENIES** White's June 4, 2021, motion for leave to file that supplemental report as a supplemental certificate of merit (Doc. 43);

- **GRANTS in part** and **DENIES in part** the United States' motion for summary judgment (Doc. 36) as follows:

  - The motion is **GRANTED** as to Count 7, and Count 7 is **DISMISSED without prejudice**.  Should White fail to file a timely certificate of merit that complies with 735 ILCS 5/2-622(a), the Court will dismiss Count 7 with prejudice.  No further extensions of time will be given absent extraordinary and unforeseeable circumstances;

  - The motion is **GRANTED** as to Count 8 to the extent it is based on allegations of negligent evaluation, diagnosis, and treatment (in other words, all aspects of Count 8 except for falsifying medical records), and that part of Count 8 is **DISMISSED** as duplicative of Count 7;

  - The motion is **DENIED** as to Count 8 to the extent it is based on the allegations of falsifying medical records, and that part of Count 8 survives as a stand-alone NIED claim;

- **ORDERS** that White shall have up to and including August 20, 2021, to obtain a certificate of merit for Count 7 that complies with 735 ILCS 5/2-622(a) and to file a motion for reinstatement of Count 7 attaching that certificate;

- **DENIES** White's request for unmonitored calls with Dr. Samuels, although the Court encourages USP-Marion officials to be generous in allowing regular, monitored calls between White and Dr. Samuels; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  June 17, 2021**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**